JS-6

1  JAMES H. HOLL, III – State Bar No. 177855
      jholl@cftc.gov
2  KATHLEEN M. BANAR, *pro hac vice*
      kbanar@cftc.gov
3  JAMES W. DEACON, *pro hac vice*
      jdeacon@cftc.gov
4  COMMODITY FUTURES TRADING
   COMMISSION
5  1155 21st Street, N.W.
   Washington, D.C. 20581
6  Telephone: (202) 418-5311
   Facsimile: (202) 418-5523
7
8  Attorneys for Plaintiff

9  Paul S. Chan - State Bar No. 183406
      pchan@birdmarella.com
   Christopher J. Lee - State Bar No. 322140
10    clee@birdmarella.com
   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
11 DROOKS, LINCENBERG & RHOW, P.C.
   1875 Century Park East, 23rd Floor
12 Los Angeles, California 90067-2561
   Telephone: (310) 201-2100
13 Facsimile: (310) 201-2110

14 Attorneys for Defendant Marco A. Ruiz Ochoa

15
16             **THE UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
17                       **WESTERN DIVISION**

18 **COMMODITY FUTURES**
   **TRADING COMMISSION**,
19
20              Plaintiff,                    **CASE NO. 2:23-cv-04015-MRA-RAO**
21         vs.                               **CONSENT ORDER FOR**
                                             **PERMANENT INJUNCTION,**
22 **DAVID CARMONA (a/k/a David**            **RESTITUTION AND EQUITABLE**
   **Segundo Carmona a/k/a Wuilver**         **RELIEF AGAINST DEFENDANT**
23 **Segundo), JUAN ARELLANO**               **MARCO A. RUIZ OCHOA**
   **PARRA, MOSES VALDEZ, DAVID**
24 **BREND, and MARCO A. RUIZ**              [*Filed Concurrently with Certificate of*
   **OCHOA, jointly d/b/a ICOMTECH**,        *Service*]
25
                Defendants.                  Assigned to Hon. Mónica Ramírez
26                                           Almadani
27                                           Action Filed:   5/24/2023
28 ─────────────────────────────────────
   CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE
   RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

# I.    INTRODUCTION

On May 24, 2023, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed the Complaint for Injunctive Relief, Civil Monetary Penalties, Restitution, and Other Equitable Relief Under the Commodity Exchange Act and Commission Regulations against Defendant Marco A. Ruiz Ochoa ("Ruiz Ochoa") as well as additional Defendants David Carmona a/k/a David Segundo Carmona a/k/a Segundo Wuilver ("Carmona"), Juan Arellano Parra ("Arellano"), Moses Valdez ("Valdez"), and David Brend ("Brend") (together "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil monetary penalties, for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26, and the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 1-190 (2023) ("Complaint," ECF Docket ("Dkt.") #1).

# II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Ruiz Ochoa without a trial on the merits or any further judicial proceedings, Ruiz Ochoa:

1.    Consents to the entry of this Consent Order for Permanent Injunction, Restitution and Equitable Relief Against Defendant Marco A. Ruiz Ochoa ("Consent Order");

2.    Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledges service of the Summons and Complaint;

4.    Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c(a), 7 U.S.C. § 13a-1;

5.      Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6.      Admits that venue properly lies with this Court pursuant to Section 6c(e), 7 U.S.C. § 13a-1(e);

7.      Waives:

    a)  Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2023), relating to, or arising from, this action;

    b)  Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

    c)  Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

    d)  Any and all rights of appeal from this action;

8.      Agrees that the Commission is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act specified in subpart (a) of Paragraph 7;

9.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Ruiz Ochoa now or in the future resides outside the jurisdiction of this Court;

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

- 3 -

10.   Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11.   Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Ruiz Ochoa's (a) testimonial obligations; or (b) right to take legal or factual positions in other proceedings to which the CFTC is not a party.  Ruiz Ochoa shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents or employees under his authority or control understand and comply with this agreement;

12.   Admits to the findings and conclusions set forth in this Consent Order;

13.   Agrees that the findings and conclusions in this Consent Order shall be taken as true and correct and be given preclusive effect therein, without further proof in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant; and

14.   Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Ruiz Ochoa in any other proceeding.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

Law, permanent injunction, restitution, and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**RUIZ OCHOA ADMITS AND THE COURT HEREBY FINDS:**

### A.    Findings of Fact

#### 1.    The Parties to this Consent Order

15.    Plaintiff Commodity Futures Trading Commission is the independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

16.    Defendant Marco A. Ruiz Ochoa is an individual who resided in Nashua, New Hampshire during the period from at least August 2018 through at least December 2019.  He is a co-founder of a business operating under the name "Icomtech."  Ruiz Ochoa has never been registered with the Commission in any capacity.

#### 2.    Summary of Defendants' Scheme

17.    As discussed in greater detail below, Ruiz Ochoa and others, individually and jointly doing business under the name Icomtech, acted in concert with and aided and abetted each other to defraud at least 190 individuals ("customers"), many in Spanish-speaking communities, out of $1,098,920.  Ruiz Ochoa's and the other Icomtech agents' fraud was in connection with their purported digital asset commodity trading on the customers' behalves.  The Icomtech fraudulent scheme occurred from at least August 2018 through at least December 2019 (the "Relevant Period").  Ruiz Ochoa was employed by Icomtech from August 2018 to March 2019.

18.    During the Relevant Period, Ruiz Ochoa and other Icomtech agents represented to current and prospective customers:

- that they would use customer money to trade Bitcoin and other digital asset commodities on the customers' behalves;

- that Icomtech would provide "daily returns" on the customers' money from the trading of between 0.9% to 2.8%;

- that Icomtech would double the customers' money in approximately four to eight months from the trading;

- that Icomtech would create an online account for the customer where the customers purportedly could watch their money grow; and

- that existing customers who referred family and friends to Icomtech would, in turn, receive commissions and/or bonuses for those referrals.

19. However, in actuality:

- Ruiz Ochoa and other Icomtech agents did not trade Bitcoin or other digital asset commodities on the customers' behalves as they represented, and did not earn daily returns nor double the customers' investments based on trading;

- Instead, Ruiz Ochoa and other Icomtech agents used customer funds to further promote the scheme, to pay for personal expenses and to pay themselves commissions and bonuses;

- Numerous Icomtech customers lost all of their funds; and

- Despite referring family and friends to Icomtech, one or more Icomtech customers did not receive commissions and/or bonuses for those referrals as Ruiz Ochoa and other Icomtech agents had promised.

### 3.    Background

20. "Icomtech" was created by Ruiz Ochoa and other Icomtech "founders."

21. Icomtech is not and was not during the Relevant Period registered as a business entity in the United States.

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE
RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

22.     Throughout the Relevant Period, Ruiz Ochoa and other Icomtech agents did business and operated and marketed Bitcoin and other digital asset commodity trading, among other things, to U.S. persons under the name Icomtech.

23.     Certain digital assets, including Bitcoin, Ether and USDC, are "commodities" in interstate commerce.

24.     Ruiz Ochoa, among other Icomtech agents, was one of Icomtech's "Main Leaders".

25.     As described below, throughout the Relevant Period, Ruiz Ochoa and other Icomtech agents, individually as well as jointly doing business as Icomtech, all fraudulently solicited customers and prospective customers, including U.S. persons, to give them money for Icomtech to trade Bitcoin and other digital asset commodities on the customers' behalves.

### 4.     Icomtech Website

26.     During the Relevant Period and while Ruiz Ochoa was employed by Icomtech, Icomtech had a website associated with its business operations, "icomtech.io".  The website was identified in Icomtech written promotional materials.

27.     Once the customer paid the Icomtech agent who had solicited them cash or transferred money by other means, an Icomtech agent created an online account for the customer through the Icomtech website, issued the customer a user ID and temporary password, and emailed the customer a link with a user ID and temporary password.

28.     Thereafter, customers could access their account information by logging in through the Icomtech website.  Through the website, customers could, among other things, access their account information, including account statements, and could check the supposed value of their accounts, including

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

purported earnings from Ruiz Ochoa's and other Icomtech agents' supposed trading on their behalves.

29.    Once logged into the "icomtech.io" website, the "my.icomtech.io" "Dashboard" page showed the customer his or her purported "Total Earning[s]" and provided the customer a link to his or her individual account(s) statement. During the Relevant Period, customers routinely accessed and used the account statements to track their purported earnings from Ruiz Ochoa's and other Icomtech agents' supposed trading on their behalves.

30.    Customers generally were told that they could withdraw their funds through the website beginning six months after deposit or after a minimum amount of $150 in earnings had accumulated.

### 5.    Ruiz Ochoa's and Other Icomtech Agents' Misrepresentations and Omissions Regarding Bitcoin and Other Digital Asset Commodity Trading

31.    During the Relevant Period, Ruiz Ochoa and other Icomtech agents, individually as well as jointly doing business as Icomtech, fraudulently solicited actual and prospective customers, including U.S. persons, to give them money for Icomtech to trade Bitcoin and other digital asset commodities through Icomtech on customers' behalves via one or more of the following: at in-person meetings – including in customers' homes, at Icomtech promotional events, in Icomtech PowerPoint and other presentations and documents circulated at Icomtech promotional events, via YouTube and other presentations posted to the internet, Zoom meetings, and through word-of mouth.

32.    Ruiz Ochoa and other Icomtech agents represented in these in-person meetings, at Icomtech promotional events and/or in Icomtech promotional material, among other things, that Icomtech would:  (1) trade Bitcoin and other digital asset commodities on the customer's behalf; (2) provide daily returns from

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

the trading of between 0.9% to 2.8%; (3) double the customer's money in approximately four to eight months; and (4) customers could use one of Icomtech's websites to create an online account where the customer could watch their money grow.

33.    Ruiz Ochoa and other Icomtech agents predominately directed their solicitations to Spanish-speaking individuals and targeted those communities. Icomtech written promotional presentations and pitches were in both Spanish and English, although predominately in Spanish.

### a.    Icomtech Promotional Events

34.    During the Relevant Period and while Ruiz Ochoa was employed by Icomtech, Icomtech flyers and/or advertisements listed the following dates and locations for Icomtech promotional events including:  January 6, 2019 at a restaurant called Luminarias in Monterey Park, California; February 5, 2019 at the DoubleTree Hotel in Commerce, California; and March, 2019 at Planet Hollywood, Las Vegas.

35.    In some instances, hundreds of people attended the Icomtech promotional events.

36.    At each of these promotional events, either Ruiz Ochoa and/or other Icomtech agents made fraudulent misrepresentations to customers and prospective customers as described in Paragraph 32 above.

### b.    Icomtech Solicitations and Promotional Materials

37.    Ruiz Ochoa and another Icomtech agent drafted or assisted in drafting Icomtech promotional material containing fraudulent misrepresentations like those described in Paragraph 32 that were posted on the Internet and/or circulated at Icomtech promotional events.

38.    Ruiz Ochoa knew that another Icomtech agent used text messages and chats, and a YouTube video to solicit customers.  Some of these text messages, chats, and YouTube videos contained fraudulent misrepresentations.

39.    Ruiz Ochoa knew that Icomtech customers were told by the Icomtech agent described in Paragraph 38 that Icomtech supposedly used trading "algorithms" and that the algorithms allowed Icomtech to "consistently" generate gains trading Bitcoin and thus "create a standard revenue for us."

40.    Ruiz Ochoa knew that Icomtech customers also were told by the Icomtech agent described in Paragraph 38 that customers' money would "double in roughly between six and eight months."

41.    Ruiz Ochoa and another Icomtech agent also claimed that Icomtech used "sophisticated algorithms" to do the trading.  For example, during an Icomtech promotional event held in or about January 2019 at "Luminarias" restaurant in Monterey Park, California, they claimed that:

- they were in the business of trading cryptocurrency, and had "robots doing the trading with sophisticated algorithms....";
- a person's initial investment would be doubled within a six-month period;
- the customer would be paid a percentage between .9% to 3% of the original investment on a daily basis;
- the customer's money could be withdrawn in Bitcoin through a Bitcoin wallet on a weekly basis once a minimum amount of $150 in earnings was accumulated; and
- through the multi-level marketing referral program, a customer would receive a 20% commission on the investment of anyone referred.

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

- 10 -

42.    Icomtech promotional presentations and materials also explained that Icomtech offered as many as eight (8) "Packages" that customers could choose to purchase for set amounts ranging from an upfront payment of $300 up to $20,000. Customers purchased packages predominately through cash payments to Ruiz Ochoa and other Icomtech agents.

43.    Ruiz Ochoa knew that Icomtech customers further were told by the Icomtech agent described in Paragraph 38 that a customer could make even more money by referring friends and family.

**6.    Ruiz Ochoa and Other Icomtech Agents Communicated About Icomtech Operations and Coordinated Their Fraudulent Solicitation Activities**

44.    Using instant messaging and voice-over-IP services and messenger applications, like WhatsApp Messenger, Ruiz Ochoa and other Icomtech agents communicated amongst themselves about Icomtech's operations, customers and solicitations during the Relevant Period.  For example, Ruiz Ochoa and other Icomtech agents communicated about rates of return, solicitation materials, and how to handle customer money.

45.    Ruiz Ochoa and other Icomtech agents, doing business as Icomtech, coordinated their solicitation activities, i.e., they often attended and presented at the same Icomtech solicitation events, used the same or similar fraudulent solicitation pitches and materials at those events and in customer meetings, and used the same or similar fraudulent solicitation materials.

**7.    Ruiz Ochoa and other Icomtech Agents Did Not Trade Bitcoin or Other Digital Asset Commodities as They Represented and Did Not Earn Daily Returns nor Double**

**the Money**

46.     Notwithstanding the representations set forth in Paragraphs 18, 32, 36, and 37-43 above, in actuality, Ruiz Ochoa and other Icomtech agents:  (i) did not trade Bitcoin or other digital asset commodities on the customers' behalves as represented; (ii) did not earn daily returns of between .09% and 2.8% based upon the trading; and (iii) did not double the customers' money based on trading.

47.     Instead, Ruiz Ochoa and other Icomtech agents used customer funds to further promote the scheme, and to pay for personal expenditures and to pay themselves commissions and bonuses.

48.     Ruiz Ochoa and the other Icomtech agents aided and abetted each others' fraudulent acts and practices set forth in Paragraphs 20-47 above.

**8.     Some Icomtech Customers Lost the Full Amount of the Funds They Deposited with Ruiz Ochoa and Other Icomtech Agents for Trading**

49.     During the Relevant Period, customers submitted their payments for Icomtech packages to Ruiz Ochoa, and Ruiz Ochoa took receipt of those customer funds. via cash.

50.     During the Relevant Period, in addition to receiving cash payments from customers, Ruiz Ochoa and other Icomtech agents received customer funds from companies associated with certain Icomtech agents, or from other Icomtech agents.

51.     Customers were generally told by Ruiz Ochoa, among others, that, after six months or after a minimum amount of $150 in earnings accumulated, they could withdraw funds from their accounts on Fridays.  Beginning in the late summer of 2019, after the time Ruiz Ochoa was employed by Icomtech, some Icomtech customers attempted to withdraw their account balances in U.S. dollars

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

and/or digital asset commodities in accordance with the instructions but found they were unable to do so, with limited exceptions.

52. A number of customers confronted Icomtech agents, including Ruiz Ochoa, about their inability to withdraw their funds, and demanded the return of their money.

53. In response to being confronted, Ruiz Ochoa directed those customers to speak with another Icomtech agent for an explanation as to why customers' money could not be immediately withdrawn and assured customers that their money was safe.

54. Despite the assurances, Ruiz Ochoa and other Icomtech agents misappropriated some, if not all of customer funds sent to Icomtech.

55. Ruiz Ochoa and the other Icomtech agents aided and abetted each others' fraudulent acts and practices set forth in Paragraphs 49-54 above.

**9.    Ruiz Ochoa's and Other Icomtech Agents' Misrepresentations and Omissions Concerning Commissions and Bonuses**

56. Icomtech customers also were told by Icomtech agents including Ruiz Ochoa that they could earn commissions and "bonus points" by recruiting others to invest in Icomtech. One Icomtech presentation stated: (i) "YOU EARN 20% for each package you sell" and "YOU EARN 3% for each package that your direct affiliate sells"; and (ii) "bonus points" earned for recruiting others to invest could be used to obtain prizes, including iPhones, Rolex watches, trips (to Las Vegas, Hawaii or Dubai), luxury cars (e.g., a Mercedes Benz), or exchange for as much as $20,000 in cash.

57. In furtherance of the Icomtech scheme, including through Icomtech solicitation materials posted on YouTube, Ruiz Ochoa and other Icomtech agents encouraged existing and prospective customers, including several California

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

customers, to refer family and friends with promises of additional returns.  Some of the existing customers accepted deposits from family and friends on behalf of Icomtech and then gave the money to another Icomtech agent.

58.    In actuality, one or more Icomtech customers did not receive referral commissions and/or bonuses as promised in various verbal and/or written Icomtech solicitations.

59.    However, Ruiz Ochoa and other Icomtech agents received commissions and/or bonuses for bringing new customers into the Icomtech scheme.  For example, one Icomtech agent claimed in a solicitation posted to the internet that he received a Mercedes Benz as an Icomtech bonus, but elected to exchange it for a $25,000 cash payment.

60.    The written promotional materials that Ruiz Ochoa and other Icomtech agents provided to customers and prospective customers did not disclose, and/or did not fully disclose, that customer money would be used to pay expenses for Icomtech and/or commissions and bonuses to Ruiz Ochoa and other Icomtech agents.

61.    Ruiz Ochoa and the other Icomtech agents aided and abetted each others' fraudulent acts and practices set forth in Paragraphs 56-60 above.

### 10.    The Criminal Action

62.    On October 13, 2022, the United States Attorney for the Southern District of New York (the "Government") filed a one count criminal indictment, under seal, for wire fraud in connection with the Icomtech scheme against, among others, Ruiz Ochoa.  Indictment, *United States v. Carmona,* 1:22-cr-00551-JLR (S.D.N.Y October 13, 2022), ECF No. 2 (hereinafter, "Criminal Action").

63.    Subsequently, on September 27, 2023, Ruiz Ochoa entered a consent preliminary order of forfeiture and forfeited $914,000 to the Government for

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

restitution.  That same day Ruiz Ochoa withdrew his plea of not guilty and entered a plea of guilty to count one of the indictment.

64.     On January 19, 2024, Ruiz Ochoa was sentenced in the Criminal Action to 60 months in prison and two years of supervised release.  The court in the Criminal Action also ordered that the determination of restitution was deferred until a later date.  As of today's date, the court has not yet made a determination of restitution in the Criminal Action.

**B.     Conclusions of Law**

**1.     Jurisdiction and Venue**

65.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

66.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because certain transactions, acts, practices and courses of business alleged in this Complaint as well as described in the Findings of Fact within this Consent Order occurred within this District, among other places.

**2.     Violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2023)**

67.     7 U.S.C. § 9(1), provides in relevant part:

It shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any . . . contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . .

68.    17 C.F.R. § 180.1(a), provides in relevant part:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]

(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

69.    Digital assets such as Bitcoin are encompassed in the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9).

70.    During the Relevant Period and by the conduct described in Paragraphs 17 to 61 above, Ruiz Ochoa, individually and/or in concert with other Icomtech agents, intentionally or recklessly used or employed, or attempted to use and employ, manipulative or deceptive devices or contrivances in connection with contracts of sale of any commodity in interstate commerce, in violation of 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a)(1)-(3), including by:

a. Misappropriating customer funds by using customer funds: (i) further promote the scheme; (ii) to pay for Icomtech expenses; and/or (iii) to pay himself and other Icomtech agents commissions and bonuses, and/or

b. Misrepresenting in in-person meetings, Icomtech promotional events, in Icomtech promotional materials posted to the internet, and in electronic communications:

    i. That Ruiz Ochoa and other Icomtech agents would use customer money to trade Bitcoin or other digital assets on the customers' behalves;

    ii. That Icomtech customers could achieve specific daily earnings;

    iii. That Icomtech customers' money would be doubled in approximately four to eight months; and

    iv. That existing customers who referred a family member or friend to give money to Icomtech for Icomtech to trade Bitcoin or other digital assets on behalf of that family member or friend would, in turn, receive commissions and/or bonuses for the referrals; and/or

c. Failing to disclose and/or failing to fully disclose in written solicitations and promotional materials, which Ruiz Ochoa and other Icomtech agents provided to customers and prospective customers, that customer money would be used to pay expenses for Icomtech and/or commissions and bonuses to Ruiz Ochoa and other Icomtech agents.

71. During the Relevant Period and by the conduct described in Paragraphs 17 to 61 above, Ruiz Ochoa, individually and/or in concert with other

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

Icomtech agents under the name Icomtech, defrauded at least 190 customers out of $1,098,920.

72.    During the Relevant Period and by the conduct described in Paragraphs 17 to 61 above, Ruiz Ochoa willfully aided, abetted, counseled, commanded, induced, procured, or acted in combination and in concert with other Icomtech agents in their wrongful conduct.  Therefore, pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Ruiz Ochoa is liable for the other Icomtech agents' violations of 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a)(1)-(3).

## IV.    INJUNCTIVE AND EQUITABLE RELIEF

**IT IS HERBY ORDERED THAT:**

73.    Based upon and in connection with the foregoing conduct, pursuant to Sections 6c of the Act, 7 U.S.C. § 13a-1, Ruiz Ochoa is permanently restrained, enjoined and prohibited from, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, intentionally or recklessly: (1) using or employing, or attempting to use or employ, manipulative devices, schemes, or artifices to defraud; (2) making, or attempting to make, any untrue or misleading statements of material fact or omissions of material fact; or (3) engaging, or attempting to engage, in acts, practices, or courses of business, which operate or would operate as a fraud or deceit upon any person, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2023).

74.    Ruiz Ochoa is also permanently restrained, enjoined and prohibited from directly or indirectly:

      a)  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

      b)  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)) or

digital asset commodities as described herein, including Bitcoin, Ether and USDC, for accounts held his name or for any account in which he has a direct or indirect interest;

c) Having any commodity interests or digital asset commodities, including Bitcoin, Ether and USDC, traded on his behalf;

d) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital asset commodities, including Bitcoin, Ether and USDC;

e) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests or digital asset commodities, including Bitcoin, Ether and USDC;

f) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2023); and/or

g) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2023)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

# V.    STATUTORY RELIEF – RESTITUTION

**IT IS HEREBY ORDERED THAT:**

75.    Ruiz Ochoa's violations of the Act and Regulations as charged merit the award of restitution.  Accordingly, Ruiz Ochoa shall pay, on a joint and several basis, restitution in the amount of one million, ninety-eight thousand, nine hundred and twenty dollars ($1,098,920) ("Restitution Obligation").  The Restitution Obligation will be deemed satisfied by the entry of an order in the Criminal Action that requires Ruiz Ochoa to pay a criminal forfeiture judgment and/or restitution in an amount equal to or greater than the Restitution Obligation.

76.    If, however, restitution is not awarded in the Criminal Action, or it if the amount awarded in the Criminal Action does not fully cover the amount of the Restitution Obligation set forth in Paragraph 75 above, any remaining Restitution Obligation balance shall be paid pursuant to the procedures set forth in Paragraphs 77 to 88 below.

77.    Ruiz Ochoa shall receive a dollar-for-dollar credit against his Restitution Obligation for any restitution or disgorgement paid in the Criminal Action.  Within ten days of any payment of any restitution or disgorgement in the Criminal Action, or ten days after the date of entry of the Consent Order, whichever is later, Ruiz Ochoa shall, under a cover letter that identifies the name and docket number of this proceeding, transmit copies of the form of payment in the Criminal Action to the Chief Financial Officer, Commodity Futures Trading Commission, and Rick Glaser, Deputy Director, Commodity Futures Trading Commission, at 1155 21st Street, NW, Washington, D.C. 20581.

78.    If not offset by payments in the Criminal Action, any outstanding portion of Ruiz Ochoa's Restitution Obligation will be subject to post-judgment interest, which shall accrue on the unpaid portion of the Restitution Obligation beginning ten days after the date of entry of any order of restitution or

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

disgorgement in the Criminal Action, or ten days after the date of entry of the Consent Order, whichever is later, and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

79.    The amounts payable to each Icomtech customer shall not limit the ability of any customer from proving that a greater amount is owed from Ruiz Ochoa or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

80.    To the extent that any funds accrue to the U.S. Treasury for satisfaction of Ruiz Ochoa's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in Paragraphs 81-84 below.

81.    To effect payment of any of Ruiz Ochoa's outstanding Restitution Obligation (i.e., any remaining Restitution Obligation not deemed satisfied and/or offset in accordance with Paragraphs 75-78 above), and the distribution of any payments to customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive payments on the Restitution Obligation from Ruiz Ochoa and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

82.    Ruiz Ochoa shall make his Restitution Obligations payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name of the "Marco A. Ruiz Ochoa Restitution Fund" and shall send such payments by  electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration,

National Futures Association, 320 South Canal Street, 24th Floor, Chicago, Illinois 60606 under cover letter that identifies Ruiz Ochoa and the name and docket number of this proceeding. Ruiz Ochoa shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

83.    The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to the customers identified by Plaintiff or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of the Restitution Obligation payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC.

84.    Ruiz Ochoa shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify the customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Ruiz Ochoa shall execute any documents necessary to release funds that they hold in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

85.    The Monitor shall provide Plaintiff at the beginning of each calendar year with a report detailing the disbursement of funds to customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

86.    The Monitor shall provide Plaintiff at the beginning of each calendar year with a report detailing the disbursement of funds to customers. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

87.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Ruiz Ochoa to ensure continued compliance with any provision of this Consent Order and to hold Ruiz Ochoa in contempt for any violations of any provision of this Consent Order.

88.    Partial Satisfaction: Acceptance by the Commission, or the Monitor of any partial payment of the Restitution Obligation shall not be deemed a waiver of Ruiz Ochoa's obligation to make further payments pursuant to this Consent Order, or a waiver of Plaintiff's right to seek to compel payment of any remaining balance.

1

## VI.    MISCELLANEOUS PROVISIONS

2      89.    Cooperation with the Commission:  Ruiz Ochoa shall cooperate fully

3  and expeditiously with the Commission, including the Commission's Division of

4  Enforcement ("Division"), in any investigation, civil litigation, or administrative

5  proceeding related to the subject matter of this action or any current or future

6  Division investigation or Commission action related thereto.  As part of such

7  cooperation, Ruiz Ochoa agrees to:

8      a.    preserve and produce to the Commission in a responsive and prompt

9            manner, as requested by Division Staff, all relevant non-privileged

10           documents, information, and other materials wherever located, in the

11           appropriate possession, custody, or control of Ruiz Ochoa;

12     b.    utilize his knowledge and skill to explain transactions, interpret

13           information and technology, or identify new and productive lines of

14           inquiry;

15     c.    prepare and appear for interviews and testimony at such times and

16           places as requested by Division staff;

17     d.    respond completely and truthfully to all inquiries and interviews,

18           when requested to do so by Division staff;

19     e.    identify and authenticate relevant documents and other evidentiary

20           materials, execute affidavits and/or declarations, and testify

21           completely and truthfully at depositions, trial, and other judicial

22           proceedings, when requested to do so by Division staff;

23     f.    accept service by mail, electronic mail, or facsimile transmission of

24           notices or subpoenas for documents and/or testimony;

25     g.    appoint his attorney as agent to receive service of such notices and

26           subpoenas; and

27

28

h.      waive the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules in connection with requests or subpoenas of Division staff.

Ruiz Ochoa understands and agrees that it shall be a violation of this Consent Order if Ruiz Ochoa fails to abide by this cooperation provision.

90.     Until such time as Ruiz Ochoa satisfies in full his Restitution Obligations under this Consent Order, upon the commencement by or against Ruiz Ochoa of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Ruiz Ochoa's debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

Secretary of the Commission

Office of the General Counsel

Commodity Futures Trading Commission

Three Lafayette Centre

1155 21st Street N.W.

Washington, DC 20581

91.     Notice:  All notices required to be given by any provision in this Consent Order, except as set forth in Paragraph 90, above, shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Rick Glaser Deputy Director, Division of Enforcement

Alison Wilson, Chief Trial Attorney

Commodity Futures Trading Commission

1155 21st Street, NW

Washington, D.C. 20581

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

Telephone: (202) 418-5000

Notice to Ruiz Ochoa:

Christopher J. Lee

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenverg & Rhow, P.C.

1875 Century Park East, 23rd Floor

Los Angeles, California 90067-2561

Telephone (310) 201-2100

92.    Change of Address/Phone:  Until such time as Ruiz Ochoa satisfies in full his Restitution Obligation as set forth in this Consent Order, Ruiz Ochoa shall provide written notice to the Commission by certified mail of any change to their telephone number(s) and mailing address(es) within ten calendar days of the change.

93.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

94.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

95.    Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

1 shall be deemed to be or construed as a further or continuing waiver of such breach

2 or waiver of the breach of any other provision of this Consent Order.

3      96.    Waiver of Service, and Acknowledgement:  Ruiz Ochoa waives

4 service of this Consent Order and agrees that entry of this Consent Order by the

5 Court and filing with the Clerk of the Court will constitute notice to Ruiz Ochoa of

6 its terms and conditions.  Ruiz Ochoa further agrees to provide counsel for the

7 Commission, within thirty days after this Consent Order is filed with the Clerk of

8 Court, with an affidavit or declaration stating that Ruiz Ochoa has received and

9 read a copy of this Consent Order.

10      97.    Continuing Jurisdiction of this Court:  This Court shall retain

11 jurisdiction of this action to ensure compliance with this Consent Order and for all

12 other purposes related to this action, including any motion by Ruiz Ochoa to

13 modify or for relief from the terms of this Consent Order.

14      98.    Injunctive and Equitable Relief Provisions:  The injunctive and

15 equitable relief provisions of this Consent Order shall be binding upon Ruiz

16 Ochoa, upon any person under his authority or control, and upon any person who

17 receives actual notice of this Consent Order, by personal service, e-mail, facsimile or

18 otherwise insofar as he or she is acting in active concert or participation with Ruiz

19 Ochoa.

20      99.    Counterparts and Facsimile Execution:  This Consent Order

21 may be executed in two or more counterparts, all of which shall be

22 considered one and the same agreement and shall become effective when

23 one or more counterparts have been signed by each of the parties hereto and

24 delivered (by facsimile, e-mail, or otherwise) to the other party, it being

25 understood that all parties need not sign the same counterpart.  Any

26 counterpart or other signature to this Consent Order that is delivered by any

27

28 CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

100. Contempt: Ruiz Ochoa understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

101. Agreements and Undertakings: Ruiz Ochoa shall comply with any and all undertakings and agreements set forth in this Consent Order.

102. Ruiz Ochoa's decision to enter into this Consent Order is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than those contained in this Consent Order.

103. Ruiz Ochoa has read and understands this Consent Order. Furthermore, Ruiz Ochoa has reviewed all legal and factual aspects of this matter with Ruiz Ochoa's attorney and is fully satisfied with that attorney's legal representation. Ruiz Ochoa has thoroughly reviewed this Consent Order with his attorney and has received satisfactory explanations concerning each paragraph of this Consent Order. After conferring with his attorney and considering all available alternatives, Ruiz Ochoa has made a knowing decision to enter into this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Marco A. Ruiz Ochoa* forthwith and without further notice.

1  **IT IS SO ORDERED** on this <u>10th</u> day of <u>December</u>,

2  2024.

3  _____

4  Mónica Ramírez Almadani

5  **UNITED STATES DISTRICT JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

CONSENTED TO AND APPROVED
BY:

_____
Marco A. Ruiz Ochoa
BOP No. 30628-510
FCI McKean
6975 Route 59
Lewis Run, PA 16738


Date: 10/27/24

Approved as to form:

_____
Paul S. Chan
Christopher J. Lee
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenverg & Rhow, P.C.


ATTORNEYS FOR DEFENDANT
MARCO A. RUIZ OCHOA

_/s James W. Deacon_
JAMES H. HOLL, III
(CA Bar No. 177855)
jholl@cftc.gov
KATHLEEN M. BANAR
_pro hac vice_
kbanar@cftc.gov
JAMES W. DEACON
_pro hac vice_
jdeacon@cftc.gov

ATTORNEYS FOR PLAINTIFF

COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5311 / (202) 418-5523
(fax)

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND EQUITABLE
RELIEF AGAINST DEFENDANT MARCO A. RUIZ OCHOA

3979674.1